*FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No.  08-92594-E-7 |
| | ) |
| ROBERT ACHTERBERG and | ) |
| STEPHANIE ACHTERBERG, | ) |
| | ) |
| Debtors. | ) |
| ———————————————— | ) |
| | ) |
| ROBERT L. ACHTERBERG, JR. and | ) Adv. Proc. No.  15-9054 |
| STEPHANIE ACHTERBERG, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CREDITORS TRADE ASSOCIATION, | ) |
| INC., dba GREAT WESTERN | ) |
| COLLECTION BUREAU, | ) |
| | ) |
| Defendant. | ) |
| ———————————————— | ) |

## MEMORANDUM OPINION AND DECISION

This Adversary Proceeding was commenced by Robert and Stephanie Achterberg ("Plaintiff-Debtors") with the filing of the Complaint on July 23, 2016.  In the Complaint Plaintiff-Debtors assert that Creditors Trade Association ("Defendant") violated both the automatic stay and discharge injunction that arose in Plaintiff-Debtors' Chapter 7 bankruptcy case.[1]  In addition to damages relating to such violations, Plaintiff-Debtors request a determination that the state court judgment issued by the California Superior Court, County of San Francisco ("SF Superior Court") Case No. CGC-08-480700 ("SF Void Judgment"), obtained by Defendant after Plaintiff-Debtors filed their

[1] Bankr. E.D. Cal. 08-925439 ("Bankruptcy Case.")

Chapter 7 bankruptcy case, is void.[2]  Defendant filed an Answer, denying specific allegations in the Complaint, and asserted affirmative defenses that its conduct was not willful or in reckless disregard, nor done with malice or intent to oppress the Plaintiff-Debtors.[3]

Trial was conducted on September 26, 2016.  Though filing an Answer and providing rebuttal testimony at trial, Defendant elected not to present any exhibits or provide any testimony as part of its defense case in chief.[4]  Defendant did file evidentiary objections and a trial brief as provided in the Trial Scheduling Order.  The court's rulings on the evidentiary objections are stated orally on the record for the September 26, 2016 trial.

Trial having been conducted, the court determines that Defendant knowingly, willfully, and intentionally violated the automatic stay and the discharge injunction by failing to vacate (until after making Plaintiff-Debtors file and serve the Complaint in this Adversary Proceeding)  the SF Void Judgment that Defendant obtained in violation of the automatic stay in February 2009.  The court does not determine that obtaining the entry of the default judgment in February 2009 itself was a knowing and willful violation of the automatic stay.  However, no later than March 2009 and continuing thereafter Defendant had actual knowledge of the December 2008 bankruptcy filing,[5] the automatic stay going into effect in December 2008 with the filing of the bankruptcy case,[6] that the issuance of the SF Void Judgment was issued in violation of the automatic stay, and the subsequent entry of the discharge with the discharge injunction going into effect in March 2009.[7]

---

[2]  Complaint, Dckt. 1.

[3]  Answer, Dckt. 12.

[4]   Defendant also failed to participate in the mandatory Pre-Trial Conference.  Civil Minutes, Dckt. 24, and Trial Setting Order, Dckt. 25.

[5]  Defendant admits knowing of the bankruptcy in December 2008 or January 2009, asserting that learning of the bankruptcy caused Defendant to "close its file" and "send it to storage," using that as the explanation as to why in February 2009 it did not have a "file" to link the SF Void Judgment to when obtaining it from the SF Superior Court in February 2009.

[6]  11 U.S.C. § 362(a).

[7]  Bankruptcy Case Dckt. 22; 11 U.S.C. § 524(a).

The court determines that the actual damages awarded Plaintiff-Debtors for the continuing violation of the automatic stay by Defendant, as well as the violation of the discharge injunction, beginning in 2009 are: (1) $1,250.00 for having to extend escrow, (2) $1,850.00 for emotional distress, and $18,261.29 in attorneys' fees and costs.[8]

In addition, the court awards $15,000.00 in punitive damages to be paid to Plaintiff-Debtors by Defendant. The court determines that the failure to vacate the default judgment was intentional, as well as both reckless and in callous disregard for the rights of the Plaintiff-Debtors and Defendant's obligations under the Bankruptcy Code to remedy violations of the automatic stay.

The Damages awarded total $36,361.29.

## HISTORY OF CHAPTER 7 BANKRUPTCY CASE
### AND
## EVENTS LEADING TO FILING OF ADVERSARY PROCEEDING

Plaintiff-Debtors commenced the Chapter 7 Bankruptcy Case on December 1, 2008. Defendant is listed on the Schedules and Mailing Matrix. As admitted by Defendant at trial, Defendant received notice of the bankruptcy filing and the subsequent March 2009 issuance of Plaintiff-Debtors' discharge being entered. It was presented to the court by Defendant that the likely turn of events was that Defendant filed the SF Superior Court action against Plaintiff-Debtors and requested entry of the default judgment before Defendant then learned of the bankruptcy filing and discharge.[9]

It was argued by Defendant, with no evidence other than the rebuttal testimony of Gary Looney (president of Defendant), that Defendant closed its "file" and sent the "file" to storage when it learned of the Plaintiff-Debtors' December 2008 bankruptcy filing. Then, after the file was

---

[8] As discussed *infra*, Congress has expressly provided in 11 U.S.C. § 362(k) that the actual damages for an individual debtor, such as Plaintiff-Debtors, include the attorneys' fees and costs relating to that violation. This is an exception to the general rule that attorneys' fees and costs for the litigation before the court are part of the post-judgment award and not "actual damages." *See* Fed. R. Civ. P. 54(d), Fed. R. Bankr. P. 7054.

[9] Defendant offered no evidence when the motion for entry of default judgment was filed, but made a general reference to the delay in obtaining default judgment from the California Superior Court. While unsupported by evidence, the court gives Defendant the benefit of the doubt with respect to the filing of the SF Superior Court Action and motion for entry of default judgment.

closed, the SF Void Judgment was received by Defendant in February 2009. When received, it is contended that the SF Void Judgment was not linked to the closed file that had been sent to storage. Thus, Defendant argues, that is the reason it took no action to immediately vacate the SF Void Judgment in February 2009 or at anytime thereafter until August 2015. For unstated reasons (based on only the rebuttal testimony of Mr. Looney), it was argued that the file could not be recovered from storage at the time of trial. However, there is no credible dispute that Defendant knew of the bankruptcy case being filed prior to the SF Void Judgment being entered, and then the debt being discharged after receiving the SF Void Judgment.

Further, Defendant offered no credible evidence for the proposition that when the SF Void Judgment was received it could not be linked to records of Defendant relating to Plaintiff-Debtors. While making the assertion that the "file" had been sent to storage and could not be recovered (with no testimony provided by the storage facility or Defendant's file storage procedures), no evidence was offered by Defendant about its computer records or its attorney's records concerning Plaintiff-Debtors. No credible evidence was presented how sending a "file" to storage rendered Defendant completely unable to link the SF Void Judgment to Plaintiff-Debtors' bankruptcy filing. Finally, no credible evidence was presented explaining why a creditor would "close a file" merely because a debtor filed bankruptcy or how a creditor could have obtained a judgment and then apparently made no effort to try and collect such judgment (after having incurred the cost and expense of obtaining that judgment).[10]

Plaintiff-Debtors provided testimony of the financial events leading up to the Chapter 7 case being filed in December 2008. These include the Plaintiff-Debtors deciding to open a restaurant, borrowing $200,000.00 using their home as equity to fund the restaurant endeavor, and then the restaurant failing after approximately eighteen months. The Chapter 7 case ensued due to the debts

---

[10] Merely because a consumer files a bankruptcy case is not the end of the "bankruptcy story," only the beginning. Filing a bankruptcy case does not guaranty that such case will be completed. Even if a debtor files all of the required documents that does not mean the debtor will obtain a discharge. Even if a discharge is entered, the creditor who has commenced debt collection litigation against a consumer debtor who has filed bankruptcy must address the bankruptcy filing and discharge in that debt collection litigation.

owed, with one of the outcomes being the Plaintiff-Debtors losing their pre-bankruptcy home to creditors.

Plaintiff-Debtors obtained their discharge and proceeded with their bankruptcy "Fresh Start" in March 2009.  By 2015 Plaintiff-Debtors were financially ready to purchase a new residence.  In the Spring of 2015, Plaintiff-Debtors entered into a contract to purchase real property commonly known as 1956 Altessa Lane, Ceres, California (the "Ceres Property").[11]  Escrow was opened and Plaintiff-Debtors' loan officer provided them with a copy of their credit report – noting that the credit report showed there being  an outstanding judgment from the SF Superior Court owed by Plaintiff-Debtors to Defendant that dated back to 2009.

A copy of the Old Republic Credit Services Report is provided as Exhibit 2 at trial.  On "Page 7/10" (upper right-hand corner, actual page 3 of Exhibit 2), the following information is provided:

| PUBLIC RECORDS | | | |
|---|---|---|---|
| Filing Date February 6, 2009 | Judgment | Municipal Court | Docket CGC08480700 |
| Reported Date "2009-02" | | Plaintiff Creditors Trade Associ | |

The only dispute raised by Defendant as to the item appearing on the credit report was whether Plaintiff-Debtors asserted that Defendant placed the information on the credit report.  As pointed out by counsel for Defendant, the information on the credit report is under the "Public Records" section of the creditor report.  This indicates that the credit reporting agencies obtained the information from public records (the SF Superior Court public records), as opposed to it being reported by Defendant.

The evidence presented does not show that Defendant affirmatively reported the judgment to any of the credit reporting agencies.  However, the Complaint and claims focus first on the entry of the SF Void Judgment against Plaintiff-Debtors in violation of the automatic stay.  Then, on

---

[11]  Exhibit 15, copy of Extension of Time Addendum citing to Purchase Agreement.

Defendant's failure to correct the continuing violation of the automatic stay from the time Defendant:

> (1) learned in December 2008 or February 2009 of the bankruptcy case being filed,

> (2) obtained the entry of the SF Void Judgment in 2009 after the filing of the bankruptcy case,

> (3) allowed the SF Void Judgment continuing to be of record at the time of and after the discharge being entered for Plaintiff-Debtors in 2009,

> (4) took no action to correct the continuing violation of the automatic stay and the discharge injunction during the period March 2009 through May 2015, and

> (5) took no action to vacate the SF Void Judgment from May 2015 (when Defendant's counsel of record in the SF Superior Court Action first sent the demand to correct the continuing violation of the automatic stay) through early August 2015,

until after Plaintiff-Debtors were compelled to file and serve the Complaint in this Adversary Proceeding to address the continuing violation of the automatic stay and discharge injunction.

Plaintiff-Debtors present evidence that the pending purchase of the Ceres Property was put at peril due to the SF Void Judgment obtained by Defendant continuing to be of public record at the SF Superior Court. The Exhibits include communications with Plaintiff-Debtors' loan broker stating that the loan documents were good until August 6, 2015, after which they would have to be redrawn.[12] Ms. Silva again contacted counsel for Plaintiff-Debtors on July 20, 2015, advising him:[13]

> I just wanted to let you know that our borrower **[Plaintiff-Debtors] is in a position of losing this transaction [Ceres Property purchase],** if there is anything that you can help with this, we are still waiting on my end for the underwriter to find out if **HUD** is going to accept the documentation, buy my fear is that they **will want it [the San Francisco County judgment] to be vacated or released.**

Ms. Silva subsequently communicated on July 22, 2015, that the loan broker needed proof that the motion to vacate the San Francisco Superior Court Judgment had been filed.[14]

Robert Achterberg, one of the Plaintiff-Debtors, provides his testimony that the escrow to close the Ceres Property purchase was stalled because of the San Francisco Superior Court Judgment

---

[12] Exhibit 4, pg. 1; email from loan broker representative Patsy Silva to counsel for Plaintiff-Debtors.

[13] *Id.*, p. 1; July 22, 2015 email Patsy Silva to counsel for Plaintiff-Debtors.

[14] *Id.*, pp. 2-4.

that appeared of record on his credit report.  This forced Plaintiff-Debtors to pay a $1,250.00 extension fee to maintain their existing contract rights to purchase the Ceres Property while they attempted to get Defendant to vacate the SF Void Judgment.  Robert Achterberg further testified that if the extension was not obtained and the Purchase Contract lapsed, Plaintiff-Debtors would have lost the $2,800.00 that they had already deposited into the purchase escrow.

### COMMUNICATIONS STATING TO BE FROM DEFENDANT'S COUNSEL CONCERNING THE CONTINUING VIOLATION OF THE AUTOMATIC STAY

Before discussing the events of 2015 and communications from the current attorney for Defendant, the court reviews the evidence presented about various attorneys for Defendant.  The undisputed testimony is that Defendant had several "in-house counsel"[15] who represented it from the time the SF Void Judgment was obtained in violation of the automatic stay through this trial.  The original "in-house counsel" was Stephen M. Kappos, Esq., whose office is located in Granite Bay, California.[16]  Mr. Looney, Defendant's president, testified that the "in-house counsel" services of Mr. Kappos started around 2007 and terminated in April 2014.

Mr. Kappos was replaced as "in-house counsel" by Ralph Pollard, an attorney who has his office in Concord, California.[17]    On the Substitution of Attorney[18] and pleadings filed by Mr. Pollard, the address of 3785 Brickway Boulevard, Suite 201, Santa Rosa, California

---

[15]  The court makes the reference to "in-house counsel" in quotes because the evidence presented that such attorneys were not "in-house employees" of Defendant but third-party law firms that had Defendant and other collection agencies as their respective clients, in addition to other clients for the law firm.  As in this Adversary Proceeding, the purported "in-house counsel," Ralph Pollard expressly represents on his pleadings that he is "Ralph L. Pollard, Esq." of the "Law Offices of Ralph L. Pollard," and not the "in-house legal department of Creditors Trade Association."

[16]  Mr. Kappos is reported by the California State Bar as having continuously in practice as an attorney in California from July 7, 1989, through the issuance of this Decision. http://members.calbar.ca.gov/fal/Member/Detail/141371.

[17]  Mr. Pollard is reported by the California State Bar as having continuously in practice as an attorney in California from December 16, 1980, through the issuance of this Decision. http://members.calbar.ca.gov/fal/Member/Detail/95975.

[18]  Dckt. 20.

(Defendant's business address) is stated as the address for Law Offices of Ralph L. Pollard. However, Mr. Looney testified that Defendant makes space available for Mr. Pollard to provide his services as "in-house counsel," with no credible evidence presented that Mr. Pollard operates the Law Offices of Ralph Pollard from Defendant's offices. *See* Answer to Interrogatories 2 and 4 of the Special Interrogatories, Exhibit 24.

In reviewing the Exhibits, all written communications from the Law Office of Ralph L. Pollard concerning the violations of the automatic stay and discharge injunction are sent from the Defendant's 3785 Brickway Boulevard, Suite 210, Santa Rosa, California. All communications from the Law Offices of Ralph L. Pollard are signed by Gary Looney bearing the title "Case Administrator" for the Law Offices of Ralph L. Pollard. *See* Exhibits 5, 6, 9, 11, 12, and 14. Mr. Looney testified that he is not an employee of the Law Offices of Ralph L. Pollard and offered no testimony as to why or how he was authorized to execute letters and communicate in the name of the Law Office of Ralph L. Pollard. Rather, Ralph L. Pollard was expressly stated to be the "in-house counsel" for Defendant. Ralph L. Pollard volunteered at trial (not testifying as a witness) that he serves as such "in-house counsel" for several collection agencies, in addition to his law practice at the Law Office of Ralph L. Pollard.

From the evidence presented, while it appears that Mr. Looney could be a "case manager" (which position was never defined) for Defendant, no credible evidence was presented that Mr. Looney was an employee of or authorized agent for the Law Office of Ralph L. Pollard. Further, the testimony is that Mr. Pollard was "in-house counsel," not a third-party law firm representing Defendant. No credible evidence was presented of any action taken by Ralph L. Pollard, personally, as "in-house counsel" (or in any attorney role) in connection with this violation of the automatic stay and discharge injunction. Though afforded the opportunity to provide evidence and testimony in opposition and as rebuttal, the only testimony provided for Defendant was by Gary Looney, who was called as a hostile witness by Plaintiff. Such testimony was stated by Defendant to serve as any rebuttal witnesses that Defendant would want to present.

At best, this "in-house counsel" relationship appears to be one in which Mr. Pollard relied upon the services of Gary Looney to do everything for Mr. Pollard's law firm. At worst, it could

1   be a situation where Mr. Pollard gave Mr. Looney his letterhead and law license, empowering

2   Mr. Looney (who is not licensed to practice law[19]) to act as a lawyer and engage in the unlicensed

3   practice of law under the name of the Law Offices of Ralph L. Pollard.

4
                           **VIOLATION OF THE AUTOMATIC STAY,**
5        **DETERMINATION THAT CONDUCT VIOLATING THE STAY IS VOID,**
              **AND OBLIGATIONS ARISING FOR A CREDITOR WHOSE**
6              **CONDUCT HAS VIOLATED THE AUTOMATIC STAY**

7        Congress and the Ninth Circuit Court of Appeals have made it clear that a violation of the

8   automatic stay is a very serious matter.  A creditor who violates the stay has an affirmative

9   obligation to correct the violation and cannot assert a defense based on the lack of action by a debtor

10  to force the remedy of that creditor's violation.  Congress has enacted a statutory stay that arises,

11  automatically, upon the commencement of a bankruptcy case that prevents creditors from taking

12  many acts, including the following:

13
     A.    "(1) the commencement or continuation, including the issuance or employment of
14          process, of a judicial, administrative, or other action or proceeding against the debtor
            that was or could have been commenced before the commencement of the case under
15          this title, or to recover a claim against the debtor that arose before the
            commencement of the case under this title; . . ."[20]
16
     B.    "(6) any act to collect, assess, or recover a claim against the debtor that arose before
17          the commencement of the case under this title;...."[21]

18       As established by the evidence presented, Defendant knowingly obtained a default judgment

19  against Plaintiff-Debtors in February 2009, which occurred after commencement of the Plaintiff-

20  Debtor's bankruptcy case in December 2008.  Defendant received notice of the December 2008

21  filing of Plaintiff-Debtors' bankruptcy case prior to obtaining the SF Void Judgment.  Defendant,

22  with knowledge of the filing of the bankruptcy case, purports to have "closed" the file and sent it

23  to storage before the SF Void Judgment was issued.  Defendant states that the reason the judgment

24  was not "caught" is because the file had been "closed" and did not get associated to it by the time

25
         [19] http://members.calbar.ca.gov/fal/MemberSearch/QuickSearch?FreeText=gary+looney
26  &SoundsLike=false&x=0&y=0.

27       [20] 11 U.S.C. § 362(a)(1).

28       [21] 11 U.S.C. § 362(a)(6).

                                              9

1  the SF Void Judgment was issued in February 2009.  As discussed above, no credible evidence is

2  presented how the "closing of a file" sometime after December 2008 (when the bankruptcy notice

3  was received) and prior to obtaining the SF Void Judgment in February 2009 (barely two months

4  later) rendered Defendant incapable of linking the SF Void Judgment to the Plaintiff-Debtors'

5  bankruptcy case, the automatic stay, the discharge, and the discharge injunction in Plaintiff-Debtors'

6  December 2008 filed bankruptcy case.

7       What Defendant admits is that it had full knowledge of the bankruptcy case by the time it

8  received the SF Void Judgment, having "closed" the file because Defendant received notice of the

9  bankruptcy case being filed.  The evidence also establishes that since February 2009 Defendant has

10  had actual knowledge of the Plaintiff-Debtors' 2008 bankruptcy case and since March 2009 the

11  entry of Plaintiff-Debtors' discharge, which includes the debt that is the subject of the SF Void

12  Judgment.[22]

13  **The Person Violating the Automatic Stay Has the Burden of**
   **Avoiding the Violation, and When a Violation Occurs, to**
14  **Remedy Such Violation**

15       The automatic stay is just that, automatic, with no obligation on a debtor to affirmatively

16  enforce the stay for it to be effective.  When a creditor has notice of a bankruptcy case, it is the

17  creditor's burden to determine the extent of the automatic stay and seek such relief as is

18  appropriate.[23]

19       The automatic stay imposes an affirmative duty of compliance by the creditor.[24]  As one of

20

21       [22]  The evidence includes a copy of the Discharge and Certificate of Service listing the
   discharge order having been served on Defendant.  Exhibit 19, Discharge and Certificate of
22  Service; Exhibit 24, Response to Interrogatory Question 1; and Testimony of Gary Looney of the
   address of Defendant.
23

24       [23]  COLLIER ON BANKRUPTCY, SIXTEENTH EDITION, ¶ 362.02; *Carter v. Buskirk (In re
   Carter)*, 691 F.2d 390 (8th Cir. 1982); *Hillis Motors v. Hawaii Automobile Dealers' Association
25  (In re Hillis Motors)*, 997 F.2d 581, 586 (9th Cir. 1993) ("Where through an action an individual
   or entity would exercise control over property of the estate, that party must obtain advance relief
26  from the automatic stay from the bankruptcy court. *Carroll v. Tri-Growth Centre City Ltd. (In re
   Carroll)*, 903 F.2d 1266, 1270-71 (9th Cir. 1990).")
27

28       [24]  *State of Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.2d 1147, 1151-
   52 (9th Cir. 1996).

the fundamental principles girding the Bankruptcy Code, "the automatic stay requires a creditor to maintain the *status quo ante* and to remediate acts taken in ignorance of the stay."[25]  The automatic stay imposes an affirmative duty to discontinue actions in violation of the stay.[26]  A creditor cannot use the state court enforcement action as leverage in negotiations once the bankruptcy case has been commenced.[27]

Once the creditor learns or has notice of a bankruptcy case having been filed, any actions that it intentionally undertakes are deemed willful.[28]  As the Ninth Circuit Court of Appeals explained in *Goichman v. Bloom*:[29]

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.  Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

It is well established that an "ignorance of the law" or advice of counsel is not a *bona fide* defense to a willful violation of the automatic stay.[30]

Though ignorance of a bankruptcy case being filed may be a defense to liability for damages

---

[25] *Franchise Tax Bd. v. Roberts* (*In re Roberts*), 175 B.R. 339, 343 (B.A.P. 9th Cir. 1994).

[26] *Sternberg v. Johnson*, 595 F.3d 937, 944 (9th Cir. 2010);  *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002) (addressing the obligation to discontinue post-petition collection proceedings).

[27] *Eskanos & Alder*, 309 F.3d at 1215.

[28] *In re Risner*, 317 B.R. 830, 835 (Bankr. D. Idaho 2004); *see also Eskanos and Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002); *Thompson v. GMAC, LLC*, 566 F.3d 699, 702-3 (7th Cir. 2009); *Emp't. Dev. Dept. v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1151 (9th Cir. 1996) (holding that the knowing retention of estate property violates the automatic stay).

[29] *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir. 1989) (citing *INSLAW, Inc. v. United States (In re INSLAW, Inc.)*, 83 B.R. 89, 165 (Bankr. D.D.C. 1988)).

[30] *Botell v. United* States, No. 2:11-cv-01545-GEB-GGH, 2012 U.S. Dist. LEXIS 41172 (E.D. Cal. March 26, 2012)*; Joe Hand Promotions, Inc. v. Estradda*, No. 1:10-cv-02165-OWW-SKO, 2011 U.S. Dist. LEXIS 61010 (E.D. Cal. June 8, 2011).

(not taking a willful act with knowledge of a bankruptcy case), such "innocent" violation does not absolve the creditor of liability for failing to correct the violation once the creditor learns of the bankruptcy case having been filed.[31]   A party who takes an action in violation of the stay not only has an obligation to cease the continuing violation, but also has an affirmative duty to remedy the violation.[32]   It is not for the debtor, debtor-in-possession, Chapter 7 trustee, or Chapter 11 trustee to chase the creditor and correct the continuing violation and force the creditor to begrudgingly comply with federal law.[33]   "The responsibility is placed on the creditor to address the continuing violation of the automatic stay because to place the burden on the debtor to undo the violation 'would subject the debtor to the financial pressures the automatic stay was designed to temporally abate.'"[34]

**Acts Taken in Violation of the Automatic Stay Are Void, Not Voidable**

That an act taken in violation of the automatic stay is void, not merely voidable, is well-established law in the Ninth Circuit as addressed by the court in *Far Out Productions, Inc. v. Oskar et al.*:[35]

---

[31]  *In re Cordle*, 187 B.R. 1, 4 (N.D. Cal. 1995).

[32]  *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191-92 (9th Cir. 2003).

[33]  *Taxel*, 98 F.3d at 1151.

[34]  *Johnson v. Parker* (*In re Johnson*), 321 B.R. 262, 283 (D. Ariz.  2005) (citation omitted).

[35]  *Far Out Productions, Inc. v. Oskar et al.*, 247 F.3d 986, 995 (9th Cir. 2001).   *See also United States of America (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992), [emphasis in original] holding:

> Our decision today clarifies this area of the law by making clear that violations of the automatic stay are void, not voidable. See *In re Williams,* 124 Bankr. 311, 316-18 (Bankr. C.D. Cal. 1991) (recognizing that the Ninth Circuit adheres to the rule that violations of the automatic stay are void and criticizing the BAP decision in this case). . .
>
> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing

12

> In fact, the automatic stay provision is so central to the functioning of the bankruptcy system that this circuit regards judgments obtained in violation of the provision as void rather than merely voidable on the motion of the debtor. See [*In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992)]. Courts regularly void state court default judgments against debtors when the judgments are obtained in violation of the automatic stay provision, even where the debtor filed for bankruptcy in the midst of the state court proceedings. See, e.g., *In re Fillion*, 181 F.3d 859, 861 (7th Cir. 1999); *In re Graves*, 33 F.3d 242, 247 (3d Cir. 1994).

Creditors who wish to take action against a debtor or property that is subject to the automatic stay "[h]ave the burden of obtaining relief from the automatic stay."[36]

The Ninth Circuit revisited this issue in *40235 Washington Street Corporation v. Lusardi (In re Lusardi)*, 329 F.3d 1076 (9th Cir. 2003), addressing a county tax sale of real property that occurred after a bankruptcy case was filed, with neither the county nor the purchaser having any knowledge of the bankruptcy case. The Ninth Circuit concluded that because the tax sale occurred while the bankruptcy case was pending, the sale was void, and that the debtor, not the purchaser, was the owner of the real property. This ruling finding that the sale was void was issued more than 12 years after the sale had occurred and the county not having refunded the purchase money paid by the buyer at the tax sale.

At trial, Defendant (weakly) advanced an argument that because the automatic stay rendered the SF Void Judgment void, Defendant's continuing violation of the automatic stay really did not harm the Plaintiff-Debtors. This contention advanced by Defendant does not just miss the mark, but foreshadows a more sinister motive behind Defendant's conduct. Though knowing that the Bankruptcy Case had been filed, Defendant allowed the SF Void Judgment to remain in the public records of the SF Superior Court – falsely telling the world (including consumer reporting agencies) that Defendant held a judgment against Plaintiff-Debtors.

---

> spell from his [or her] creditors. *It stops all collection efforts, all harassment, and all foreclosure actions.* It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97 (emphasis added).

[36] *In re Schwartz*, 954 F. 2d at 572.

**Liability for Violations of the Automatic Stay**

A violation of the automatic stay is addressed as "ordinary civil contempt." For individual debtors Congress has created additional statutory remedies pursuant to 11 U.S.C. § 362(k).[37]

The basic analysis as discussed by the Ninth Circuit Court of Appeals in *Dyer v. Lindblade*[38] for considering civil contempt is stated as follows:

> "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *Bennett*, 298 F.3d at 1069. Because the "metes and bounds of the automatic stay are provided by statute and systematically applied to all cases," *Jove Eng'g v. IRS (In re Jove Eng'g)*, 92 F.3d 1539, 1546 (11th Cir. 1996), there can be no doubt that the automatic stay qualifies as a specific and definite court order.

> In determining whether the contemnor violated the stay, the focus 'is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue.' *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996) (internal citations omitted); accord *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 93 L. Ed. 599, 69 S. Ct. 497 (1949). (Because civil contempt serves a remedial purpose, "it matters not with what intent the defendant did the prohibited act.")

> The threshold standard for imposing a civil contempt sanction in the context of an automatic stay violation therefore dovetails with the threshold standard for awarding damages under § 362(h). *Pace*, 67 F.3d at 191 (incorporating the willfulness standard of § 362(h) as explicated by *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir. 1992)). Under both statutes, the threshold question regarding the propriety of an award turns not on a finding of 'bad faith' or subjective intent, but rather on a finding of 'willfulness,' where willfulness has a particularized meaning in this context:

> > '[W]illful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

> *Pace*, 67 F.3d at 191; see also *Pinkstaff*, 974 F.2d at 115; *Hardy*, 97 F.3d at 1390; cf. *Bennett*, 298 F.3d at 1069 (describing standard for imposing civil contempt sanctions under § 105(a) for violation of discharge injunction).

Congress has created the additional statutory remedies for an individual debtor who asserts claims for violation of the automatic stay, providing in 11 U.S.C. § 362(k) [emphasis added]:

> (k) (1) Except as provided in paragraph (2), an **individual injured by any willful violation** of a stay provided by this section **shall recover** actual damages, including

---

[37] *Dyer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1190-91 (9th Cir. 2003).

[38] *Id.*

14

costs and attorneys' fees, and, in appropriate circumstances**, may recover punitive damages**.

  (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

**Actual Damages**

The basic measure of damages for violation of the automatic stay is the amount of economic loss the debtor has suffered as the proximate result of the defendant's violation. The court takes into account the fair market value of the property that was disposed of in violation of the automatic stay.[39] Actual damages for violation of the automatic stay include emotional distress damages.[40] For a debtor to state a claim for emotional distress damages, the individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between the significant harm and the violation of the automatic stay.[41] Medical evidence of emotional distress is not required; the testimony of family members, friends, and co-workers is sufficient to establish an emotional distress claim.[42] In some cases no corroborating evidence is required. An example cited in *Dawson* is where the egregious conduct was the creditor pretending to hold a gun to the debtor's head.[43] Additionally, the court in *Dawson* stated that even when the conduct was not egregious, the court could award emotional distress damages where the circumstances make it obvious that a reasonable person would suffer emotional harm, such as the emotional distress of having to cancel a child's birthday party because the debtor's checking account

---

[39] *In re Kaufman*, 315 B.R. 858, 866 (N.D. Cal. 2004).

[40] *Dawson v. Wash. Mut. Bank* (*In re Dawson*), 390 F.2d 1139, 1148 (9th Cir. 2004).

[41] *Id.* at 1149.

[42] *Id.*, citing *Varela v. Ocasio* (*In re Ocasio*), 272 B.R. 815, 821-22 (B.A.P. 1st Cir. 2002) (holding that testimony of debtor's wife was sufficient to support an award of medical damages without medical testimony).

[43] *Dawson*, 390 F.2d at 1149 (citing *Wagner v. Ivory* (*In re Wagner*), 74 B.R. 898, 905 (Bankr. E.D. Pa. 1987)).

15

was frozen.[44]

Congress has also provided that the "actual damages" for an individual debtor seeking to redress a violation of the automatic stay "shall" include "costs and attorneys' fees." 11 U.S.C. § 362(k)(1). The costs and attorneys' fees include those incurred in the individual debtor in having to prosecute the action to recover the damages caused by the violation of the stay even after the violation has been abated, but the violating party fails to pay the then existing damages (as with the violation now before the court).[45]

**Punitive Damages**

In addition to actual damages, 11 U.S.C. § 362(k)(1) permits the recovery of punitive damages "in appropriate circumstances." The Ninth Circuit has cautioned that punitive damages are only appropriate if there has been some showing of "reckless or callous disregard for the law or rights of others."[46] The bankruptcy court is given considerable discretion in granting or denying punitive damages under 362(k).[47] Punitive damages are properly awarded to punish unlawful conduct and deter its repetition.[48]

A debtor entitled to actual damages does not automatically qualify under § 362(k)(1) to recover punitive damages. The court must decide whether the circumstances of each case warrant punitive damages.[49] When considering an award for damages, the court considers the gravity of the

---

[44] *Id.* (citing *United States v. Flynn* (*In re Flynn*), 185 B.R. 89, 93 (S.D. Ga. 1995) ($5,000.00 award of emotional distress damages because 'it is clear that the appellee suffered emotional damages' when she was forced to cancel her son's birthday party because her checking account was frozen)); *see also Sternberg*, 595 F.3d at 943.

[45] *America's Servicing Company v. Schwartz-Tallard (In re Schwartz Tallard)*, 803 F.3d 1095, 1101 (9th Cir. 2015). This even includes the right to attorneys' fees for having to defend an award of damages pursuant to 11 U.S.C. § 362(k) on appeal. *Id.*

[46] *Bloom*, 875 F.2d at 228.

[47] *Id.*

[48] *See  Cooper Indus. v. Leatherman Tool Group*, 532 U.S. 424, 432 (2001);  *BMW of N. Am. v. Gore*, 517 U.S. 559, 568 (1996);.

[49] *Henry v. Assocs. Home Equity Servs. (In re Henry)*, 266 B.R. 457, 481-83 (Bankr. C.D. Cal. 2001).

offense and sets the amount of punitive damages to assure that they will both punish and deter.[50] A creditor's good faith or lack thereof is relevant to sanctions under § 362(k)(1).[51] In determining the appropriate amount of punitive damages, the court usually considers the following factors: (1) the nature of the defendants' acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendants.[52]

In evaluating the "nature" of the Defendant's acts, the court considers the purpose of the automatic stay and the role it serves in the bankruptcy process. The automatic stay, as stated by Congress, is a fundamental protection given the debtor and creditors.[53] Violations of the automatic stay are not something with which a creditor may trifle. Even when a violation occurs, the creditor can purge the improper conduct and avoid more significant damages by correcting the violation.

The court also considers the proportionality of the punitive damages to the compensatory damages awarded to the Plaintiff-Debtors. The rule in both the Ninth Circuit and in California is

---

[50] *Id.*

[51] *See Walls v. Wells Fargo Bank (In re Walls)*, 262 B.R. 519, 529 (Bankr. E.D. Cal. 2001).

[52] *Bauer v. NE Neb. Fed. Credit Union (In re Bauer)* No. EC-09-1281, 2010 Bankr. LEXIS 5096, (B.A.P. 9th Cir. Apr. 8, 2010).

[53] H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 340-344:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

1  that punitive damages must be proportional and be reasonably related to compensatory damages.[54]

2  However, there is no fixed ratio or formula for determining the proper proportion between the two.[55]

3  In a 2004 decision, *State Farm Mutual Auto Insurance Company v. Campbell*, 538 U.S. 408 (2004),

4  the Supreme Court discussed the Constitutional reasonableness requirement in determining the

5  amount of punitive damages.  While not setting a maximum ratio between punitive damages and

6  compensatory damages, the Supreme Court stated that punitive damage awards that are a single digit

7  multiple of the compensatory damages are more likely to withstand constitutional scrutiny.[56]  The

8  Court in *State Farm* cited to its earlier holding in *BMW of North America v. Gore*[57] that a punitive

9  damage award (that in *Gore* was 500 times the compensatory damages) in excess of four times the

10  compensatory damages might be close to the line of constitutional impropriety.

11

12
13
**DETERMINATION THAT CONDUCT OF DEFENDANT WAS WILLFUL
AND IN CALLOUS DISREGARD FOR THE RIGHTS OF PLAINTIFF-DEBTORS
AND THE OBLIGATIONS OF DEFENDANT UNDER 11 U.S.C. § 362(a)**

14          Though the evidence does not show that Defendant was aware of the bankruptcy filing when

15  the motion for entry of default judgment in the San Francisco State Court Action was filed, it is clear

16  that Defendant had actual knowledge of the December 2008 bankruptcy filing when the SF Void

17  Judgment was entered and received by Defendant in February 2009.  It is further clear that

18  Defendant had knowledge that any obligation to Defendant was discharged and the imposition of

19  the discharge injunction in March 2009 when Defendant was served with the Discharge issued by

20  this court.  From the period February 2009 through July 2015, Defendant took no action to vacate

21  the SF Void Judgment obtained in violation of the automatic stay or to correct the false public

22

23

24
    [54]  *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1162-63 (9th Cir. 1987).
25
    [55]  *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1024-25 (9th Cir.
26  1985).

27
    [56]  *Cooper Industries v. Leatherman Tool Group*, 532 U.S. at 425.
28
    [57]  517 U.S. at 582.

18

recording stating that Defendant had a judgment against Plaintiff-Debtors.[58]

With full knowledge of the bankruptcy case and discharge, Defendant failed to act for:

| | | |
|---|---|---|
| A. | Ten Months in 2009 | 306 days |
| B. | Twelve more Months in 2010 | 365 days |
| C. | Twelve more Months in 2011 | 365 days |
| D. | Twelve more Months in 2012 | 366 days |
| E. | Twelve more Months in 2013 | 365 days |
| F. | Twelve more Months in 2014 | 365 days |
| G. | Seven more Months in 2015 | 212 days |

For a Total of Seventy-Seven Months     =     2,343 days,

until Defendant forced Plaintiff-Debtors to file this Adversary Proceeding (and incur all of the costs and expenses relating thereto) to address Defendant's continuing violation of the automatic stay. Only after the Adversary Proceeding was filed did Defendant take action to correct the SF Void Judgment.  During the above period, the SF Void Judgment was allowed by Defendant to be a continuing false statement to the world (including consumer reporting agencies) in the SF Superior Court public record that Defendant held an enforceable judgment against Plaintiff-Debtors.

The action, and inaction, of Defendant in 2015 manifests conduct that goes beyond merely "willful," but that was in reckless or callous disregard of the law and the rights of Plaintiff-Debtors. From Defendant's conduct in May through August 2015, as well as the inaction in February 2009 through April 2015, the court concludes that Defendant intentionally failed to vacate the SF Void Judgment.  Defendant knew that the SF Void Judgment was obtained and allowed to continue as a matter of public record falsely stating that a judgment existed in violation of the automatic stay during that six-year period.  Additionally, in the May to August 2015 period, Defendant failed to

---

[58]  Though afforded the opportunity to present evidence to the court of the attempts made by Defendant, nothing was presented but the testimony of Gary Looney (called as a hostile witness by Plaintiff-Debtors and offered as a rebuttal witness).  It appears that part of the explanation is that Defendant cannot get the file back from storage because it is reported as lost. However, that contention rings hollow in the 21st Century when businesses maintain electronic data bases and records, including electronic logs of the actions taken in the course of operating the business.  Striking in its absence is the failure of Defendant to present the court with evidence and documents of all its "good works" in June and July 2015 to promptly address its continuing violation of the automatic stay and vacate the SF Void Judgment.  There was not any presented that Defendant's 2015 and thereafter "files" (physical and electronic) relating to the SF Void Judgment and actions taken to correct the violation of the automatic stay when requested, and then demanded, in 2015 are "lost."

act in response to the direct requests to correct the continuing violation of the automatic stay, forcing Plaintiff-Debtors to incur further costs, expenses, and damages in having to file and prosecute the present Adversary Proceeding.  The Adversary Proceeding was first necessary to compel Defendant to first correct the continuing violation of the automatic stay and discharge injunction.  Then, even though Defendant showed it could quickly vacate the SF Void Judgment (but only after being served with the summons and Complaint), the prosecution of this Adversary Proceeding was necessary to enforce Plaintiff-Debtors' right to recover damages caused by the continuing violation of the automatic stay and discharge injunction.

It appears that Defendant may have believed that if it failed to act to correct the continuing violation, Plaintiff-Debtors' counsel would give up and not file the Complaint given the cost and expense of such litigation.  This would allow Defendant to continue in the violation of the automatic stay and maintain the false appearance of having a judgment against Plaintiff-Debtors, who Defendant may have perceived as desperate to purchase their new home.

It also may have been that Defendant believed that Plaintiff-Debtors' counsel might suggest that Plaintiff-Debtors take a "financially expedient route," forgo filing the Complaint (and incurring tens of thousands of dollars in attorneys' fees for years of litigation) and throw a couple thousand dollars at Defendant to "buy" a correction of the false public record and continuing violation of the automatic stay.  In this matter now before the court, Plaintiff-Debtors' counsel did not give advice to throw money at Defendant to "buy" a correct credit report and "buy" the correction to the continuing violation of the automatic stay.  Plaintiff-Debtors did not take the easy way out, instead electing to enforce the rights provided for by Congress in the Bankruptcy Code.

The court also notes that Plaintiff-Debtors and Plaintiff-Debtors' counsel went to great lengths to afford Defendant the opportunity to correct the continuing violation of the automatic stay.  Even when the counsel of record who obtained the SF Void Judgment failed to respond to Plaintiff-Debtors' counsel, Defendant and its current counsel (with all communications being with and through Mr. Looney, president of Defendant, making the communications for Defendant's attorney) were given more time to correct the continuing violation.  Even though given additional time and opportunities, while Defendant and Defendant's counsel (as communicated by Mr. Looney)

promised the SF Void Judgment would be vacated, no action was taken by Defendant.

That Defendant could quickly and easily vacate the SF Void Judgment is demonstrated by Defendant doing that–but only after being served with the summons and Complaint in this Adversary Proceeding.  Once sued, Defendant had the SF Void Judgment vacated within days.  The Certificate of Service states that Defendant was served by mail with the Summons and Complaint by it being placed in the United States Mail, postage prepaid, on July 29, 2015,  Dckt. 9; and testimony of Malcolm Gross.  July 29, 2015, was a Wednesday, and assuming prompt delivery of the mail, the Summons and Complaint would have been received by Defendant on Friday, July 31, 2016.  By Monday, August 3, 2015, the Law Offices of Ralph L. Pollard, in a correspondence written by Gary Looney, states that Defendant has arranged to present the motion to vacate at an *ex parte* hearing on Friday, August 7 –  just four days later.  Exhibit 11.

Defendant has demonstrated that it had the ability, if it wanted to act, to have the SF Void Judgment vacated within days of having actual knowledge of the bankruptcy case and discharge in 2009.  More significantly, Defendant had the ability to have the SF Void Judgment vacated within days of the July 2, 2015 letter sent to Stephen Kappos (as Defendant's State Court counsel) and Defendant, and the July 14, 2015 response from the Law Offices of Ralph Pollard as the attorney for Defendant (which is signed by Gary Looney) stating that the motion to vacate will be filed.[59]  No explanation is given as to why and how Defendant did not promptly act to immediately vacate the SF Void Judgment in the first week or two of July 2015, rather than forcing  Plaintiff-Debtors to file the Adversary Proceeding and serve the Summons and Complaint on July 29, 2015.

The less than business reasonable conduct (reasonable conduct being that intended to minimize litigation and avoid incurring otherwise unnecessary expense and cost) continued by Defendant through trial.  In connection with the determination of attorneys' fees and costs awarded as part of Plaintiff-Debtor's actual damages, Defendant argued that $4,346.00 was the maximum amount of reasonable fees because that is the amount that existed as of August 2015, when Defendant finally acted to vacate the SF Void Judgment.  Therefore, Defendant argues that Plaintiff-

---

[59]  Exhibits 3 and 5.

Debtor should be denied all of the actual damages legal fees incurred in trying to recover the financial, emotional distress, and attorneys' fees actual damages which admittedly existed as of August 2015. This contention that the actual damages attorneys' fees do not include the attorneys' fees in having to litigate this action is without legal support as shown by the ruling of the Ninth Circuit Court of Appeals in *America's Servicing Co. v. Schwartz-Tallard* discussed *supra*.

To the extent that Defendant seeks to contend that having to incur any legal fees past the August 2015 vacating of the SF Void Judgment was unnecessary, Defendant's conduct is to the contrary. Defendant fails to present any evidence that it ever made an offer to pay the actual damages in August 2015, or at any time during the period from August 2015 through the December 2016 hearing to determine the amount of attorneys' fees and costs as actual damages. No evidence is presented of any monies being tendered for the actual damages which existed as of August 2015 or at any time thereafter. No evidence is presented that Defendant made a Federal Rule of Civil Procedure 68 and Federal Rule of Bankruptcy Procedure 7068 offer to base a contention that any further attorneys' fees and costs are unreasonable in light of such an offer to have judgment entered against Defendant.

Defendant's Opposition to the Motion to Determine Attorneys' Fees[60] demonstrates a continuing pattern of attempting to leverage the cost of Plaintiff-Debtors having to enforce their rights to letting Defendant avoid paying what it owed. Defendant's contention that the Plaintiff-Debtors should not be awarded attorneys' fees for having to prosecute litigation to obtain a judgment for damages that Defendant did not or would not pay, is without merit. Further, it manifests a systemic problem with Defendant's conduct in failing to address the continuing violation of the automatic stay and the damages caused by it. It manifests a coordinated, willful scheme to violate the automatic stay and the rights of Plaintiff-Debtors.

///

///

---

[60] Dckts. 48 and 50,

**DAMAGES FROM WILLFUL CONDUCT OF DEFENDANT**

**Actual Damages**

The Actual Damages awarded Plaintiff in this Adversary Proceeding total $21,361.29 and are comprised of the following parts.

*Economic Damages.* The evidence establishes that due to the SF Void Judgment not being vacated, and Defendant ignoring and failing to affirmatively act to correct its continuing, knowing violation of the automatic stay, Plaintiff-Debtors were forced to pay $1,250.00 to extend the escrow to not only avoid losing the ability to purchase the house, but also not lose the $2,800.00 escrow deposit they had made as part of the purchase contract.[61] The undisputed evidence shows that the escrow for the purchase of the home by Plaintiff-Debtors was delayed because the SF Void Judgment continued to be reported in the official records of the San Francisco Superior Court.[62] These damages flow directly from Defendant continuing to violate the automatic stay by allowing the SF Void Judgment to remain of public record and failing to act in the May - August 2015 period to correct the continuing violations of the stay.

Defendant's argument that because it did not "report" the item to credit reporting agencies, the fact that it appeared on the Plaintiff-Debtors' credit report having been obtained from the public record (SF Superior Court) could not be Defendant's "fault,"[63] is not only without merit on these facts, but demonstrates continuing intentional conduct to avoid the legal obligations of Defendant. The judgment was requested by Defendant. The judgment was obtained in violation of the automatic stay by Defendant. Defendant knew it was in the public record, being told of the credit report problem, and failed to act.

---

[61] Direct Testimony Statement and Testimony at Trial of Robert Achterberg.

[62] It was argued that Plaintiff-Debtors also lost a portion of an escrow credit due to the delay in closing caused by the SF Void Judgment not being vacated and remaining in the public record. However, the possible evidence for that was to be provided by Patsy Silva, the loan officer. Ms. Silva was not presented as a witness at trial as required by L.B.R. 9017-1 and no basis was presented to the court to accept written testimony in lieu of the required live testimony.

[63] Old Republic Credit Services credit report, listing the State Court Judgment as one obtained by Defendant for a judgment in the amount of $6,467.00 against Plaintiff-Debtors.

*Emotional Distress Damages.*  Plaintiff-Debtors have requested emotional distress damages for the delay in being able to close escrow to purchase their home and the stress of that purchase being in peril by the SF Void Judgment that Defendant did not have vacated.  The knowledge of this SF Void Judgment putting the purchase of Plaintiff-Debtors' home in jeopardy occurred during the period of May 2015 through August 7, 2015, when the SF Void Judgment was vacated (after this Adversary Proceeding was commenced) by Defendant.

The evidence of emotional distress damages is provided in the testimony of Robert Achterberg.  He testifies that having found the home they desired purchase (having finally rehabilitated Plaintiff-Debtors' credit and recovered from the financial losses that necessitated the 2008 bankruptcy), Plaintiff-Debtors had to "deal" to keep the escrow alive.  For Mr. Achterberg, Plaintiff-Debtors' last resort was to have their attorney file this Adversary Proceeding (and incur all the costs and expenses relating thereto) to try and save the escrow after Defendant failed to have Void SF Judgment vacated pursuant to Plaintiff-Debtor's multiple requests.  The court observed Mr. Achterberg at trial during his testimony.  He is a credible witness and demonstrated how significantly the impediment the SF Void Judgment, and Defendant's failure to vacate the SF Void Judgment, caused with the possible loss of the house the Plaintiff-Debtors were attempting to purchase as their new home.

It is obvious to a reasonable person that, having weathered the Chapter 7 bankruptcy, rehabilitating their credit, and finding a house to be Plaintiff-Debtors' home, and then the purchase of that home being blocked by a void judgment, Plaintiff-Debtors would suffer emotional distress.  While not causing Plaintiff-Debtors to cease working or suffer a mental breakdown, it did cause emotional distress.  For ninety-three (93) days of emotional distress of having the loss of the future family home and the $2,850.00 escrow deposit, the court awards $1,850.00 of emotional distress damages.  This works out to $19.89 a day of damages, a very modest, reasonable amount.

*Costs and Attorneys' Fees Damages.*  Congress mandates that the costs and attorneys' fees incurred by an individual debtor from an automatic stay violation, including the litigation to recover damages, shall be awarded the individual debtor.  After conducting the trial, the court had a separate hearing on December 15, 2016, to determine the amount of costs and attorneys' fees to be awarded

as actual damages.  The separate hearing for the costs and attorneys' fees served several purposes. First, going into the trial the actual legal fees for the "trial" could not be stated with any certainty. Having a separate hearing on that issue allowed the parties to present clear evidence and arguments on the issue of what proper costs and fees should be allowed.  Additionally, it afforded Defendant an opportunity (after participating in the trial and hearing the court's comments at the conclusion of the trial) to try and resolve this dispute, limiting further costs and expenses.

At the hearing on December 15, 2016, the court determined that the reasonable and necessary costs and attorneys' fees incurred as part of the 11 U.S.C. § 362(k)(1) actual damages are $18,261.29 ($17,589.00 in attorneys' fees and $672.29 in costs).[64]  No serious argument was made that the attorneys' fees requested were not necessary and reasonable for the litigation of Adversary Proceeding through judgment by Plaintiff-Debtors.[65]   The only argument advanced by Defendant was the unreasonable contention that the actual damages attorneys' fees do not include the fees that an individual debtor has to incur to enforce the right to recover the damages already caused by the violation of the automatic stay.

**Punitive Damages**

The evidence establishes that Defendant intentionally acted with recklessness (at least in 2009 through April 2015) and intentionally and in callous disregard (clearly for May 2015 into August 2015) of the law, the rights of Plaintiff-Debtors, and the obligations of Defendant arising under the Bankruptcy Code for the automatic stay (11 U.S.C. § 362(a)) and the discharge injunction (11 U.S.C. § 524(a)(2), (3)) in failing to act to vacate the SF Void Judgment.  Arguably, this callous disregard continued through trial, with Defendant not presenting any evidence of attempts to pay for the damages caused and contending it is unreasonable to pay the mandatory attorneys' fees for

---

[64]  Civil Minutes, Dckt. 54, and Order, Dckt. 56.

[65]  In the Opposition to Plaintiff-Debtors' Motion for Attorneys' Fees:

> Creditors Trade Association, Inc. does not object to the hourly rates asserted by plaintiffs' counsel nor does CTA question the actual time spent.

Opposition, Dckt. 50.

1    making Plaintiff-Debtor to endure more than a year of litigation to recover the statutorily mandated

2    damages in 11 U.S.C. § 362(k).

3        The court concludes from the Evidence that in July 2015, Defendant intentionally chose not

4    to vacate the SF Void Judgment.  The court further determines that in failing to act Defendant did

5    so intentionally, in an apparent attempt to exert pressure on the Plaintiff-Debtors by using the

6    SF Void Judgment to block the purchase of Plaintiff-Debtors' home.

7        This intentional conduct, both reckless and in callous disregard of Plaintiff-Debtors' rights

8    under the automatic stay and the discharge injunction, warrants the award of punitive damages to

9    correct the conduct of Defendant.  Additionally, Defendant and other similarly situated persons must

10   be deterred from trying to use void judgments and violations of the automatic stay to leverage a

11   debtor into forgoing his or her rights because of the costs and expenses of having to seek remedy

12   the creditor's continuing violations through litigation.  Defendant has demonstrated that it pushed

13   Plaintiff-Debtors into having to incur the costs and expenses of litigation to remedy Defendant

14   improperly impairing Plaintiff-Debtors' ability to purchase of a home.  Though afforded multiple

15   opportunities to act to vacate the SF Void Judgment, Defendant, failed to act.  Only after it put

16   significant economic burdens on Plaintiff-Debtors (cost of commencing the litigation), Defendant

17   finally acted to correct the continuing violation–which remedy only took less than one week.  Then,

18   Defendant complains that Plaintiff-Debtor proceeded with the litigation to recover the statutory

19   damages that Defendant's failure to act caused.

20       Not  to award punitive damages would give Defendant and similarly situated creditors the

21   green light to knowingly continue to violate the stay, and refuse and fail to remedy that continuing

22   violation.

23       Plaintiff-Debtors have not provided the court with financial information of the Defendant

24   to be used in determining how large the punitive damages need to be to have the desired deterrent

25   effect.  However, sufficient information has been provided for the court to determine appropriate

26   punitive damages.  First, Defendant presents itself to this court as an active debt collector of

27   sufficient size that it has for years maintained an "in-house counsel" to represent it.  In this

28

Adversary Proceeding alone, Defendant has chosen to be represented by multiple law firms.[66] This demonstrates a level of ongoing business operations of significant economic size. The amount of the SF Void Judgment obtained in violation of the automatic stay was $8,405.65 when obtained in February 6, 2009.[67] Using only whole months and computing post-judgment interest from March 2009 through July 2015, the SF Void Judgment Defendant allowed to continuously be represented to the public as a valid judgment totaling $13,779.24 as of July 2015 (including post-judgment simple interest of 10% per annum pursuant to Cal. C.C.P. § 685.010.)

Given the intentional conduct of Defendant and the callous disregard of the rights of Plaintiff-Debtors and Defendant's obligation to remedy the continuing violation of the automatic stay, the court determines that punitive damages in the amount of $15,000.00 is necessary and appropriate. It is necessary to deter Defendant from continuing to engage in such conduct, ignoring its obligations under the automatic stay, and make it clear that there is no economic incentive to violate the stay and not correct a continuing violation of the automatic stay. Further, it is an appropriate amount to deter similarly situated creditors from "gambling" that a debtor may elect to pay a creditor to remedy a continuing violation of the stay rather than pursuing the debtor's rights under 11 U.S.C. § 362(k).

Punitive damages in the amount of $15,000.00 is a relatively modest amount, both in the amount of absolute dollars and the financial facts of the violation. The SF Void Judgment Defendant left hanging over Plaintiff-Debtors' heads and impairing the home purchase escrow had

---

[66] In this Adversary Proceeding Defendant has been represented by two different law firms. First, the law firm of Provencher & Flatt, LLP appeared with Douglas Provencher of that firm filing the answer for Defendant. Dckt. 12. On March 21, 2016, a Substitution of Attorney was filed by which Mr. Provencher and his firm were substituted out, and Ralph Pollard and the Law Offices of Ralph L. Pollard were substituted in as counsel of record for Defendant in this Adversary Proceeding. Dckt. 20.

Then, on November 30, 2016, Mr. Provencher and his firm filed an Opposition to Motion for Attorneys' Fees, listing Mr. Provencher and his firm as co-counsel with Mr. Pollard and his firm for Defendant in this Adversary Proceeding. Dckt. 50. An association of counsel was filed on December 12, 2016. Dckt. 54.

[67] Exhibit "A" to the Complaint.

grown to $13,779.24 as of July 2015. The $15,000.00 is only slightly more than the amount of the SF Void Judgment when it was finally vacated in 2015.

Additionally, the actual damages required by Congress to be awarded Plaintiff-Debtors total $21,361.29. The $15,000.00 punitive damage award is less than the actual damages, well within the single digit multiple guidelines of the Supreme Court.

Even if the court were to consider only the economic and emotional distress damages which total $3,100.00, the $15,000.00 is less than 5-times those damages, well within the single digit multiple guidelines of the Supreme Court.

While modest, the $15,000.00 in punitive damages should be sufficient to deter Defendant and other similarly situated persons who are or have violated the automatic stay from forcing debtors to commence litigation to stop continuing violations of the automatic stay. It will also deter Defendant and other similarly situated persons from trying to "hardball" a debtor into walking away from enforcing his or her right to recover damages by failing to make a good faith offer to settle the dispute, pay the damages, or at least make a Federal Rule of Civil Procedure 68 offer for judgment to cap the liability. The $15,000.00 punitive damages reasonably make Defendant's practices demonstrated in connection with this violation make such a stay violation game not worth the damages candle.[68]

## DISCHARGE INJUNCTION VIOLATIONS

In addition to the asserted violations of the automatic stay, Plaintiff-Debtors assert that Defendant has also violated the discharge injunction. Congress has provided in 11 U.S.C. § 524(a) that a discharge granted in a case under Title 11 (Bankruptcy Code):

> (a) A discharge in a case under this title --
>
>   (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

---

[68] The phrase that "the game is not worth the candle" is a phrase meaning that the cost of the endeavor is not worth the possible benefit. Cambridge Advanced Learner's Dictionary & Thesaurus, Cambridge University Press.

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

As discussed in COLLIER ON BANKRUPTCY, SIXTEENTH EDITION, ¶ 524.02[a], an act to try and collect or obtain payment on a discharged debt violates the discharge injunction. This includes attempts to have a debtor "voluntarily" pay a discharged debt in order to obtain a future loan (such as a home purchase) by leaving a discharged debt being reported as a current obligation on a credit report. *Id.*, ¶ 524.02[b].

A party who knowingly violates the discharge injunction can be held in contempt under 11 U.S.C. § 105(a). *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2005). It must be shown that the party asserted to have violated the discharge injunction: (1) knew the discharge injunction was applicable and (2) intention the actions which violated the injunction. *Id.* From the evidence presented the court concludes that Defendant knew of the discharge, was aware of the discharge injunction, failed to act to correct the void judgment after learning of the discharge in 2009, and then in 2015 when expressly told that the void judgment was impairing Plaintiff-Debtors' fresh start and ability to buy a home, Defendant failed to take any action to correct this violation until forcing Plaintiff-Debtors to sue it. No good faith reason was shown by Defendant for failing to act or why only after forcing Plaintiff-Debtors to incur the cost and expense of actually having to sue Defendant that Defendant could get the void judgment vacated in just a couple of days.

///

///

///

///

**DEFENDANT'S CONDUCT ALSO CONSTITUTES CONTEMPT IN
THE VIOLATION OF THE AUTOMATIC STAY
AND
VIOLATION OF THE DISCHARGE INJUNCTION**

Plaintiff-Debtors have presented clear and convincing evidence of Defendant's violation of both the automatic stay and discharge injunction. It is undisputed that Defendant was not only aware of the bankruptcy case being filed but Plaintiff-Debtors having obtained their bankruptcy discharges in March of 2009. Defendant purports to not having known it needed to vacate the SF Void Judgment because it had "closed the file" because Plaintiff-Debtors had filed bankruptcy. Defendant offers no explanation how a judgment just sat around its office orphaned from any client and any consumer debtor.

Defendant offers no credible, good faith explanation as to why it failed to act in the Summer of 2015, though promising to vacate the judgment. Defendant's intention to continue in the violation of the automatic stay and violate the discharge injunction are shown by its failure to act. This occurred even though Defendant and its attorneys, the Law Office of Ralph Pollard (with Gary Looney communicating for that Law Office with counsel for Plaintiff-Debtors), knew that the SF Void Judgment was improperly impairing Plaintiff-Debtors' ability to purchase a home. Defendant's quick about face and getting the SF Void Judgment vacated within days demonstrates that any delay and promises were not in good faith.

Fortunately for Defendant the damages for the violation of the discharge injunction are the same damages as those for the continuing violation of the automatic stay. As for punitive damages, the court believes that the $15,000.00 of punitive damages are sufficient to address both the violation of the automatic stay and the violation of the discharge injunction.

**JUDGMENT TO BE GRANTED PLAINTIFF-DEBTORS**

Judgment is granted for Robert and Stephanie Achterberg, the Plaintiff-Debtors, in the amount of $36,561.29 (in the amount specified above) against Creditors Trade Association, the Defendant. The court also grants judgment determining that the SF Void Judgment was a void judgment, having been issued in violation of the automatic stay.

This Memorandum Opinion and Decision constitutes the court's findings of fact and

conclusions of law.  Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052.

Dated: February 03, 2017

By the Court

Ronald H. Sargis, Judge
United States Bankruptcy Court

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*.  The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| Debtor(s) | Attorney for the Debtor(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Robert and Stephanie Achterberg<br>2467 Millcreek Court<br>Modesto, CA 95351 | Steven S. Altman, Esq.<br>1127 12th Street, Ste. 104<br>Modesto, CA 95354 |
| Creditors Trade Association<br>Attn: Gary Looney, President<br>3785 Brickway Blvd., Ste. 210<br>Santa Rosa, CA 95403 | Ralph L. Pollard, Esq.<br>5098 St. Celestine Court<br>Concord, CA 94521 |
| Malcolm D. Gross, Esq.<br>1040 S. Mt. Vernon Avenue, Ste. G-316<br>Colton, CA 92324 | Douglas B. Provencher, Esq.<br>823 Sonoma Avenue<br>Santa Rosa, CA 95403 |